IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-03349-SBP

A.M.,[1]

      Plaintiff,

v.

FRANK BISIGNANO,[2] Commissioner of Social Security,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

**Susan Prose, United States Magistrate Judge**

      Plaintiff A.M. brings this action under Title II, 42 U.S.C. §§ 401 *et seq*., of the Social Security Act (the "Act") for review of the Commissioner of Social Security's (the "Commissioner") final administrative decision denying her claim for disability insurance benefits ("DIB"). The court has carefully considered the administrative record, ECF No. 9 ("AR"),[3] Plaintiff's opening brief, ECF No. 11 ("Brief"), the Commissioner's response brief, ECF No. 12 ("Response"), and the applicable law. No hearing is necessary.

      For the reasons below, the court respectfully **AFFIRMS** the Commissioner's decision.

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] Frank Bisignano is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See* 42 U.S.C. § 405(g) (an action survives regardless of any change in the person occupying the office of the Commissioner of Social Security).

[3] The court uses "ECF No. " to refer to specific docket entries in CM/ECF and uses "AR: " to refer to documents in the administrative record. The administrative record is found at ECF No. 9.

**BACKGROUND**

On October 2, 2021, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning September 10, 2021. AR: 43. Her claim was denied initially on May 17, 2022, and upon reconsideration on January 30, 2023. *Id.* Plaintiff then requested a hearing, which was held by video on October 27, 2023. *Id*. Administrative Law Judge Debra Denney ("ALJ") issued a decision unfavorable to Plaintiff dated January 18, 2024. AR: 43–62. The Appeals Council denied review on August 5, 2024, making the ALJ's decision the final agency decision. AR: 26–30.

**DIB FRAMEWORK**

A person is disabled within the meaning of the Act "only if his physical and/or mental impairments preclude him from performing both his previous work and any other 'substantial gainful work which exists in the national economy.'" *Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *1 (D. Colo. Jan. 12, 2011) (quoting 42 U.S.C. § 423(d)(2)). "However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months." *Brandon v. Colvin*, 129 F. Supp. 3d 1231, 1232 (D. Colo. 2015) (citing *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995)). "[F]inding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time." *Fritz v. Colvin*, No. 15-cv-00230-JLK, 2017 WL 219327, at *8 (D.

Colo. Jan. 18, 2017) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994)).

The Commissioner is required to follow a "five-step sequential evaluation process" which guides the determination of whether an adult claimant meets the definition of disabled under the Social Security Act. 20 C.F.R. § 404.1520(a)(i)-(v). If it can be determined that the claimant is disabled or not at a step, the Commissioner makes the determination and does not continue to the next step. 20 C.F.R. § 404.1520(a)(4). However, if that determination cannot be made, the Commissioner proceeds to the next step. *Id.*

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is "not disabled regardless of [] medical condition . . . age, education, and work experience." 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b).

Step two assesses whether the claimant has a medically severe impairment or combination of impairments under § 404.1509. *See* 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not show "any impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities," the claimant is "not disabled" regardless of "age, education, and work experience." 20 C.F.R. § 404.1520(c).

Step three tests whether the claimant's "impairment(s) meets or equals" a listed impairment and "meets the duration requirement[.]" 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled regardless of "age, education, and work experience." 20 C.F.R. § 404.1520(d). If not, the Commissioner analyzes the claimant's residual functional capacity, or "RFC," which "is the most [the claimant] can still do despite [their] limitations." 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1).

Step four considers whether the claimant "can still do [their] past relevant work" based on their RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e). To be disabled, the claimant's "impairment(s) must prevent [them] from doing [their] past relevant work." 20 C.F.R. § 404.1520(f). For guidance on this determination, "ALJs often seek the views of 'vocational experts,'" or "VEs." *See Biestek v. Berryhill*, 587 U.S. 97, 100 (2019) (citing 20 C.F.R. §§ 404.1566(e), 416.966(e)). If the claimant's "severe impairment" prevents them from doing their "past relevant work" or they have no "past relevant work," the analysis continues to the final step. 20 C.F.R. § 404.1520(g).

Lastly, step five considers the RFC assessment and the claimant's vocational factors — "age, education, and work experience." 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1). Any other work the claimant "can adjust to must exist in significant numbers in the national economy (either in the region where [they] live or in several regions in the country)." 20 C.F.R. § 404.1560(c)(1). The Commissioner is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [their] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2). If the claimant "can make an adjustment to other work," they are "not disabled." 20 C.F.R. § 404.1520(g)(1).

The claimant has the burden of proof at steps one through four. The Commissioner bears the burden at step five to prove there is other work the claimant can perform. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The burden-shifting at step five, however, does not shift the plaintiff's burden to prove her RFC. 20 C.F.R. § 404.1560(c)(2) ("We are not responsible for providing additional evidence about your residual functional capacity because we will use the

same residual functional capacity assessment that we used to determine if you can do your past

relevant work.").

**THE ALJ'S DECISION**

Relevant to this appeal, at step one the ALJ found Plaintiff had not engaged in substantial

gainful activity since September 10, 2021. AR: 45. Although the record reflected post-onset

income during the fourth quarter of 2021 and throughout 2022, the ALJ credited Plaintiff's

testimony that this income represented MetLife long-term disability benefits, not wages from

work activity. *Id.*

At step two, the ALJ found that Plaintiff had the following severe impairments:

sacroiliitis, degenerative disc disease of the lumbar spine with radiculopathy, ankylosing

spondylosis, axial spondylosis, headaches/migraines, and elevated BMI. AR: 45. The ALJ found

Plaintiff's knee impairments, vision abnormalities, mild intermittent asthma, hypothyroidism,

kidney stones, adjustment disorder, bipolar disorder, major depressive disorder, and

psychological factors affecting physical conditions to be non-severe. AR: 46–49. With respect to

kidney stones, the ALJ found that although Plaintiff was treated for them in April 2023, the

absence of continued treatment records demonstrated the condition did not last a continuous

twelve-month period and therefore did not meet the durational requirements for a severe

impairment. AR: 46; *see also Duration Requirement for Disability*, SSR 23-1p, 2023 WL

8236247, at *1 (S.S.A. Nov. 7, 2023). With respect to Plaintiff's mental impairments, the ALJ

evaluated the four "paragraph B" criteria and found at most mild limitations in two of the four

functional areas, with no limitation in interacting with others or in concentrating, persisting, or

maintaining pace. AR: 48–49.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any listed impairment, including Listings 1.15, 11.02, and 14.09. AR: 48–50. Regarding migraines specifically, the ALJ acknowledged that September 2023 neurology records reflecting three to four migraines per month could be consistent with the frequency required under Listing 11.02, but found that the listing also requires the migraine activity to continue at that level for three months despite treatment compliance. AR: 50. Because neurology records did not extend beyond September 2023, the evidence was insufficient to establish the required duration. *Id.*

Between steps three and four, the ALJ found that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) — meaning the ability to lift and carry 20 pounds occasionally and 10 pounds frequently, sit for six hours, and stand and/or walk for six hours in an eight-hour workday — with the following additional limitations: she can frequently climb ramps and stairs, balance, kneel, and crouch; occasionally climb ladders, stoop, and crawl; must avoid work at unprotected heights or being near fast-moving machinery; and is limited to work in a moderate noise level environment. AR: 50–51. In formulating the RFC, the ALJ expressly added the moderate noise restriction and the occasional lifting cap to account for Plaintiff's migraine history and overall record, building upon the light work limitations assessed by State Agency reviewing physician Dr. Alan Coleman. AR: 59.

At step four, the ALJ found Plaintiff could perform her past relevant work as a cashier II as generally performed. AR: 60–61. Alternatively, at step five, relying on the testimony of vocational expert Daniel Best, the ALJ found Plaintiff could also perform other light, unskilled work existing in significant numbers in the national economy, including small products assembler (DOT 739.687-030), electronics worker (DOT 726.687-010), and bench assembler

(DOT 706.684-042). AR: 61–62. The ALJ accordingly concluded Plaintiff was not disabled. AR: 62.

## STANDARD OF REVIEW

In reviewing the Commissioner's decision, the court "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence" *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014). "The phrase 'substantial evidence' is a 'term of art'' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek*, 587 U.S. at 102 (quoting *T-Mobile South, LLC v. Roswell*, 574 U.S. 293, 301 (2015)). In applying the substantial-evidence standard,

> a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek*, 587 U.S. at 102–03 (citation modified).

The court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Knight*, 756 F.3d at 1175 (citation omitted); *see also Lax*, 489 F.3d at 1084 (the court may not displace the Commissioner's choice between two fairly conflicting views, even if the court would have made a different choice if the matter had been before it de novo). Even so, the court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d

7

1067, 1070 (10th Cir. 2007)). "[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Dai*, 593 U.S. 357, 369 (2021) (citation modified).

In addition, this court's review is guided by the harmless error doctrine, which the Tenth Circuit Court of Appeals applies to social security disability cases. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). A court "may apply harmless error in the social security context 'where, based on material the ALJ did at least consider (just not properly), [it] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" *Armijo v. Astrue*, 385 F. App'x 789, 792 (10th Cir. 2010) (quoting *Allen*, 357 F.3d at 1145).

**ANALYSIS**

Plaintiff's sole assignment of error is that the ALJ failed to build an accurate and logical bridge between the evidence relating to her migraine headaches and the RFC. Brief at 8–14. Specifically, Plaintiff contends the ALJ did not explain how the RFC accommodated the acknowledged baseline frequency of twice-monthly migraines, should have included limitations for absences or off-task time, and posed a flawed hypothetical to the VE by omitting those limitations. *See id.* The court is not persuaded.

## I.    Standards

For claims filed on or after March 27, 2017 — as is the case here because Plaintiff filed her application in October 2021 — the ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical findings. 20 C.F.R. § 404.1520c(a). An ALJ must "give consideration to all the medical opinions

in the record," *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012), and articulate

how persuasive she finds the opinion of each medical source. 20 C.F.R. § 404.1520c(b)(2). The

persuasiveness of a medical source's opinion is evaluated primarily by supportability and

consistency, which "are the most important factors" and must be addressed. 20 C.F.R.

§ 404.1520c(b)(2).

The RFC is the most a claimant can do on a regular and continuing basis despite her

limitations. 20 C.F.R. § 404.1545(a)(1); *Titles II & Xvi: Assessing Residual Functional Capacity*

*in Initial Claims*, SSR 96-8p (S.S.A. July 2, 1996) ("RFC is not the *least* an individual can do

despite his or her limitations or restrictions, but the *most*.") but the *most*.").  The claimant bears

the burden of providing evidence to establish her functional limitations. 20 C.F.R.

§ 404.1545(a)(3). An ALJ need include in the VE hypothetical only those limitations she finds

credible and supported by the record. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).

II.    **Application**

A.  **The ALJ Built an Adequate Logical Bridge Between the Migraine Evidence
    and the RFC**

Plaintiff argues the ALJ failed to explain how the RFC accommodated her migraines and

that the RFC discussion was focused exclusively on her spinal impairments. Brief at 9–10. The

court disagrees. Read as a whole, the ALJ's nearly twenty-page decision satisfies the

requirement that the agency's path be "reasonably discerned" from the decision. *Garland*, 593

U.S. at 369.

The ALJ's treatment of Plaintiff's migraines was extensive, running from the step two

severity finding through the step three listing analysis and into the RFC discussion. AR: 45–59.

She discussed Plaintiff's testimony that she experienced migraines once per week and that they

could last a whole day, AR: 51, 87, as well as her headache questionnaire reporting one headache per week of varying severity, AR: 52, 261. The ALJ traced the history of Plaintiff's treatment with neurologist Dr. Jonathan Datar, beginning with Plaintiff's initial report in March 2021 of two to three migraines per week, AR: 52, 423, through the addition of the medications propranolol and Nurtec which, within approximately six weeks, reduced frequency to two migraines per month, AR: 53, 425. The ALJ then followed the record through November 2021 — at which Dr. Datar noted migraines were "well controlled" — through a February 2022 report of one to two migraines per month with "good rescue relief from Nurtec," through October 2022 records continuing to describe migraines as well-controlled on medication, and through February 2023 records showing continued good response to medications and approximately two headaches per month. AR: 55–56, 434–35, 437–38, 767–71, 772–76. The record further reflects that shortly before Plaintiff's alleged disability onset date, her baseline migraine frequency was already one to two migraines per month — the same frequency to which she returned after medication adjustments — suggesting that her treated state represented a restoration of her pre-onset norm, not merely a suppression of symptoms. AR: 52. The ALJ's step-three discussion of Listing 11.02[4] further demonstrates that she carefully considered the frequency and duration of Plaintiff's migraines. AR: 50.

The ALJ did not leave this connection implicit. When evaluating the persuasiveness of

---

[4] Because there is no specific listing for migraine headaches, the most analogous listing is Listing 11.02, for epilepsy. *Titles II & Xvi: Evaluating Cases Involving Primary Headache Disorders*, SSR 19-4p 2019 WL 4169635, at *7 (S.S.A. Aug. 26, 2019) ("Epilepsy Listing 11.02 "is the most closely analogous listed impairment for [a medically determinable impairment] of a primary headache disorder.").

Dr. Coleman's opinion, she stated that she was adding a workplace noise restriction — beyond the limitations Dr. Coleman had assessed — to account for Plaintiff's "history of migraines." AR: 59. Plaintiff's own Function Report confirmed that loud noises triggered her migraines and that she had difficulty in loud environments. AR: 253. That logical bridge is stated on the face of the decision.

Plaintiff is correct that the ALJ's narrative explanation of the RFC at AR: 58 focused primarily on her spinal impairments. But the logical bridge does not need to appear in a single paragraph; it must be discernible from the decision read as a whole. *See Dai*, 593 U.S. at 369. Here, the ALJ's extensive discussion of the migraine treatment records at AR: 51–57, combined with her explicit statement at AR: 59 that she added the noise restriction to account for Plaintiff's "history of migraines," provides that bridge. The ALJ was not required to consolidate her entire migraine analysis into the RFC narrative paragraph or to repeat conclusions already articulated elsewhere in the decision. *See Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *5 (10th Cir. Oct. 28, 2022) (holding that so long as the court can "trace the path of an adjudicator's reasoning," the ALJ has met the articulation requirements). The path is readily traceable here.

### B.  The Omission of a Computer-Screen Restriction was Harmless

Plaintiff argues the ALJ should have included an explicit restriction on computer use as an additional migraine trigger. Brief at 13. While the ALJ did not include such a restriction in the written RFC, that omission is harmless in light of the VE testimony. After the VE identified three light-work occupations in response to the RFC hypothetical, the ALJ specifically asked: "Let's say [Plaintiff] should not be assigned computer work, would that be something that [she] would need to do with the three jobs you've provided?" AR: 92. The VE responded that those

occupations "would not involve any substantive computer use." AR: 93. All three step-five jobs therefore could be performed even if a computer restriction had been included in the written RFC, and Plaintiff has not demonstrated that its omission changed the outcome. *See Allen*, 357 F.3d at 1145; *see also Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (recognizing that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination").

### C.  The ALJ Did Not Err by Omitting Absence or Off-Task Limitations

Plaintiff argues that because the ALJ acknowledged a baseline of twice-monthly migraines, the RFC should have included limitations for work absences or off-task time, and that the VE's testimony that missing work once weekly would preclude competitive employment proves the error was not harmless. Brief at 13–14; AR: 92. This argument fails for two independent reasons.

First, the ALJ did not simply "accept" that Plaintiff had two migraines per month. The ALJ found that Plaintiff's reported frequency varied considerably throughout the record and that her higher-frequency reports were inconsistent with contemporaneous treatment records. AR: 57–58. Plaintiff reported to consultative examiner Dr. Rangole in April 2022 that she was having one to two migraines per week; the ALJ found this "significantly greater than the one to two migraines per month that [she] reported to her neurologist in February and October 2022." AR: 58; *compare* AR: 533 *with* AR: 437–38, 767–71. That credibility determination is within the ALJ's province. *Richardson v. Perales*, 402 U.S. 389, 399 (1971). And when Plaintiff reported an increase to three to four migraines per month in September 2023 — immediately before the October 2023 hearing — the ALJ reasonably found that there was insufficient evidence to

12

determine whether that increase persisted or resolved after her medication was adjusted. AR: 57; *see also* SSR 23-1p, 2023 WL 8236247, at *5 ("Because of the duration requirement, we will not include limitations in the RFC assessment that completely resolve, or that we expect to completely resolve, within 12 months."). The ALJ explicitly stated she would not include RFC limitations to address that frequency of migraine activity for this reason. AR: 57.

The ALJ's credibility assessment of Plaintiff's migraine frequency reports is further reinforced by the ALJ's broader findings regarding Plaintiff's subjective allegations. At AR: 58, the ALJ identified a pattern of inconsistency in Plaintiff's reported lifting abilities — ranging from a self-reported inability to lift more than ten pounds in her first Function Report, to fifteen pounds the following month, to thirteen pounds in June 2022, to twenty pounds at the hearing — and found those inconsistencies undermined Plaintiff's subjective allegations regarding her physical limitations generally. AR: 58, 253, 594. This same global credibility assessment reasonably informed the ALJ's treatment of Plaintiff's migraine frequency reports, which exhibited a similar pattern of inconsistency across the record.

Second, no treating source, examining source, or State Agency medical consultant opined that Plaintiff's migraines would cause her to miss work at any rate affecting competitive employment. AR: 59. Dr. Coleman — whose findings the ALJ found most persuasive — assessed Plaintiff capable of a range of light work and noted her headaches were controlled with medication. *Id.* The complete absence of any medical opinion linking migraine frequency to work-preclusive absences is significant. 20 C.F.R. § 404.1545(a)(3). An ALJ is not required to include limitations in the RFC that are not supported by the record evidence or medical opinion. *See Kirkpatrick v. Colvin*, 663 F. App'x 646, 649 (10th Cir. 2016). Where, as here, no

medical source has opined that a claimant's condition would result in work-preclusive absences, the claimant has not met her burden of establishing that such a limitation is warranted. *See* 20 C.F.R. § 404.1545(a)(3). Moreover, even accepting a baseline of one to two migraines per month, Plaintiff identifies no evidence that each migraine would fall on a scheduled workday, last a full workday, or be entirely unresponsive to Nurtec, which the treatment records consistently reflected provided good rescue relief. AR: 437–38, 767–71. The VE's testimony about once-weekly absences being work-preclusive, AR: 92, addresses a factual premise the ALJ reasonably rejected; it does not, by itself, establish that the ALJ was required to inquire further. The ALJ asked the VE about the impact of being absent "once a week" — a frequency entirely unsupported by the record for the relevant period — and was not required to construct and pose additional absence hypotheticals at frequencies she had already found lacked evidentiary support. *See Qualls*, 206 F.3d at 1373. The gap between the acknowledged baseline migraine frequency and work-preclusive absenteeism is Plaintiff's burden to close. She has not done so.

### D.  The VE Hypothetical Was Not Flawed

Plaintiff's challenge to the VE hypothetical is a restatement of her RFC argument. Brief at 13–14. Because the ALJ properly formulated the RFC, the hypothetical — which incorporated those same limitations — was proper. *Qualls*, 206 F.3d at 1373; *cf. Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) ("The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the record."). Having properly declined to include absence or off-task limitations in the RFC, the ALJ was equally not required to include them in the hypothetical. Indeed, the ALJ went

14

beyond what was required by probing the VE on both the computer-use question and the once-weekly absence question, AR: 92–93, and in each instance the record fully supports the ALJ's ultimate conclusions. The hypothetical properly reflected the limitations the ALJ found credible and supported by the record. Nothing more was required.

## CONCLUSION

For the reasons set forth above, the court respectfully finds that the ALJ applied the correct legal standards and that substantial evidence supports the Commissioner's decision. Accordingly,

**IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**. The Clerk of Court shall enter judgment in favor of Defendant and close this case.

DATE: May 26, 2026                              BY THE COURT:

_____

Susan Prose
United States Magistrate Judge

15